Good morning, your honors. My name is Michael Boland, morning counsel.     An appeal from a denial in a trial court of a motion to suppress evidence. And it's a relatively simple and forward issue. The trial court ruled that the defendant did not have standing. That was the basis of its ruling. And citing the cases of Rakes v. Illinois, United States v. Jones. Then he went on to say, although the government had raised the question of abandonment, I'm not going to even consider that. Now the government's reply today is that, well, he should have considered that abandonment, because the evidence supports that. So isn't Sawyer a trespasser in this house? No. Why not? He's helping somebody move out of the place or be there. You know, every time you go into a person's house, you have to check their lease. No, you don't have to check their lease. Doesn't the owner say that this person is a trespasser? The owner comes later. This boy goes in there before anybody else. It's not a posted place like trespassers keep out, like they do for the hunting season. It's not like that at all. He's there with his friends to help. But if you help a trespasser move, if you go into property with a trespasser, and that trespasser is not supposed to be there, are you saying it's okay for you to be there? Well, you're not committing any offense if you go there innocently without knowledge. I'm startled. Pardon? I find that a startling proposition. If somebody comes into my house when I'm not home and they bring someone else with them and I didn't give them permission, they're not trespassing? The record is that they were assisting people, the former tenant, to move property out of there. I was going to say, I think the district court found otherwise. Are you saying that's a clearly erroneous finding? Yeah, I am. Why? Because it's contested. Well, the fact that it's contested doesn't mean that it's clearly erroneous. It doesn't mean it's clearly straightforward. The concept of trespassing is a misdemeanor in Illinois law. What are you trespassing on? Nobody says, the guy says, get out, get out. Then you're trespassing if you don't. There's no notice of any type. You don't have the right to get in there to help a person move. He didn't have the permission of the owner to be on the property. How do you know what the owner is? No one who was authorized could give him permission. How do you know what the owner is? Let's say a friend of yours asks you to help him move my piano. I go over there. Do I have to check a lease? Do I have to check with the real estate agent to help him move? These are young kids. I don't see that at all. Let's switch to whether he had a subjective expectation of privacy in the backpack. What's the evidence of that? Let's deal with that. The court cited Rakers v. Illinois and U.S. v. Jones. The irony of that is that neither one of those cases is the defendant claiming a property interest in the subject matter seized. Those cases involve firearms and shells. This case, the defendant in this case claims, yeah, he acknowledged to the police, this is my backpack. That's his claim. It's his right of privacy. Not consistently. Didn't he also disclaim ownership of the backpack? Yeah, maybe a few hours later. But you make the claim. Wasn't it almost immediately afterwards? No. When they brought the backpack out, he said it was his backpack. Yes. When they pulled the guns out and his ID, he said that's not my backpack. It was shortly after. In the station. What does that change? If you initially say that's mine, you assert a right. Not if you later disclaim it, though. Yes, you do. So why is the first assertion the permanent status of the backpack? Because he claims it's his and there's evidence that it's his because his identification is it. That's a further proof of it besides his oral statement. Was there any evidence submitted in connection with the motion to establish his subjective expectation of privacy in the backpack? I'm not sure on the court's question. At the district court level, did he submit an affidavit or sworn statement or anything to establish his expectation of privacy in the backpack? No. So you're relying on Mr. Boland for purposes of expectation, his first statement that he later recanted that that's my backpack? Well, he did. He said a contradictory statement. He didn't say I recant, Judge. I'm just trying to determine, Mr. Boland, to follow up on what Judge Barrett asked you, what is the basis in the record that you are relying on for his subjective expectation of privacy in the backpack? His statement to the officer in charge. The initial statement that he later recanted. Yes. Actually, I would not characterize it as a statement that he later recanted. It's his statement. If he says something inconsistent with that later, that's inconsistent. But it's not a withdrawal of initial claim. First off, he establishes a Fourth Amendment right to privacy. Second. So can I just be clear? If I go to an empty house, let's say the front door is unlocked, and I put my purse in that house and I walk away, and I have no right to go in that house. It just happens to be unlocked. You would say that having left my purse there, I still have an expectation of privacy in my purse, even though I've put it in some place that I have no business being in? Well, nobody says to the defendant, had an actual possession of that backpack at any time. The backpack is found in the basement. These boys are found on the first floor. Right. So it's found in the house. It's in the house. We agree. Who brought it there? Maybe your pal brought it. Maybe somebody else brought your purse into place for you. There are some cases, you know, the United States versus Carlisle. Isn't that counter to your argument of an expectation of privacy if you're now trying to back away that it's his backpack? No. No. I'm saying it is his backpack, okay? I'm just saying he never had possession of it. Not until he was asked by the police officer when he's in custody and Mirandized, whose backpack is this? He says it's mine. So that gives you standing. The judge is wrong on DeRicka's and on Jones'. The analysis, I think, of the Fourth Amendment cases is best expressed in the United States versus Carlisle, the 2010 Seventh Circuit opinion. It looks like a law review article by Judge Flom. It's very extensive. But the point of the matter is it's a personal right. The judge in this case says the right attaches to the property. Wrong. It doesn't attach to the property. It's a personal right that attaches to the person. And the right is also a right that society wants to protect. That's the other link to it. So it is such a right. Suppose the police go into a house, and they're told by the owner nobody should be in here, and they find an item and they search that item in the house. The owner has said, you have my permission to search anything you find in the house. No, I didn't say that, DeRicka. No, I'm saying hypothetically. Hypothetically, they go into a house. The owner has given them permission to search anything they want to in the house. And there's a backpack sitting there in the middle of the living room or down in the basement or someplace. And so they search that, too. And it turns out the backpack was left behind by a trespasser. Are you saying that that trespasser's Fourth Amendment rights have been violated? Yes. Okay. Here, you can't give consent. That's your purse. That does not give the owner the right to search your purse. Go get a search warrant. The owner's in there. The owner just said, it's my house. You have the right to search anything you want to. In my hypothetical. In your hypothetical. All right. The situation here was he told them something a little different. He said, they should be out of here, and there should be no property in here. I want them removed, okay? That doesn't give the police the right to go in and search the property. No, he specifically told him. Go get a warrant. The record evidence is that the owner specifically told them they could search, that they had his consent to search. No, he didn't. He said he wants it removed. He didn't say search at any time in the record. He said nobody should be in there. That's right. And he allowed them in. Go inside and check my house. Yeah. I mean, we have to be a little common sense about what that means. Well, I agree. Maybe my common sense is the experience that you can't just give away a Fourth Amendment right vicariously. That person has a right to Fourth Amendment expectation of privacy in the closed container. Okay. So I think your time is up. Yes. All right. Thank you. Thank you. Thank you. Mr. Fullerton. Good morning. May it please the Court. The district court correctly denied the motion to suppress. The district court focused on the lack of a reasonable expectation of privacy in that backpack, in the house where Mr. Sawyer had been a trespasser. Mr. Fullerton, you were very careful just now, and I appreciate it with the way you phrased that, the lack of an expectation of privacy. Is there any way to get the district courts to stop talking about this as a matter of standing and focus on the reasonable expectation of privacy as the Supreme Court has instructed? It might take a while. It has already taken decades. So I don't know what to do. But anyway, I'm appreciative that you phrased it the right way just now. I guess that's why we're talking about it here in these terms. Mr. Sawyer never established a subjective expectation of privacy in the backpack. Is this an abandonment theory? Once you've decided to drop something off in a house you're trespassing in, you waive by doing that the right to object to whatever's in the closed container? That's right. And we argued that below, and we argue that now. And I think it folds into this expectation of privacy argument. If you abandon property and you don't take steps to preserve its privacy or show any evidence that you expect it to remain private, you've abandoned it. What about zipping it? I mean, in some of the other trespassing cases, the guns or the drugs are in a closet maybe or out on a counter, which is different than a closed container, especially one that's clasped. What if it was a lockbox that had a gun in it? Can you have an expectation of privacy in an item that you have secured even if you had left something out in the open? You would have no expectation of privacy. That may be harder. Was that this case? I don't think that's this case because the backpack, for example, had no identifying information on it. On the outside of it, one couldn't tell whose it was, whether it was Mr. Sawyer's or the homeowner's or somebody else's. There was no lock on it. It was not in a locked location of the house. And let's say it was locked. Would the expectation of privacy that Mr. Sawyer claimed to have in that locked backpack, would that be reasonable if he's left it behind in a house where he's trespassing? Is this any different from the police? Suppose the police found a backpack exactly like this one, no name on it, no external locks just zipped up, and they found it in the middle of a football field. Nobody's around. It's outside. Could the police just open that backpack and take a look in? Yes. One thing I would like to point out this morning is that the opening of the backpack and the disclosure that it had firearms in it took place inside the house at the time it was found before Mr. Sawyer said, that's my bag, and then later disclaimed that that was his bag. So the police had opened up the bag. I think the record shows that once they found the firearms in the basement, I think it was under the stairs in a closet, they radioed out to the police officers who remained outside the house and said, we found a bag with guns in it. They brought the bag outside, and at that point they had also found a telephone in the bag, and they asked not whose firearms these were, but whose phone it was, and Mr. Sawyer said, ah, it's my phone, and then they said, is this your bag? And he said, that's not my bag. I thought he said it was his bag at first. You're saying it was only the phone he identified? I think he said, that's my phone. I thought he said it was his bag. I thought he originally said it was his bag and then later said it wasn't. I think he said, it's my phone in my bag, and then when confronted with the bag itself and its contents, said, no, no, that's not my bag. Would it matter here? I don't think it would. I think the search was reasonable at the time it took place, namely in the basement of the house without Mr. Sawyer having said anything about it. How important is it that the owner had asked that they, quote, check? I think it's very important. The owner has consented to the checking of his property, to make sure that there's nothing there that shouldn't be there or any other person who shouldn't be there, and he's consented to the search of his house. Didn't the owner specifically tell them, if there's anything in there, I want it out? He did. Was there anything else in there? It appeared as if it was vacant. In looking at the police reports that were part of the record, I think that the only other thing that was found was like some chips and soda, some snack items. It seemed like it was a vacant home otherwise. It was a vacant home. No furniture, et cetera. That's how I understand it. That's what it seemed like from the record, just this backpack and some food. That's right. So the owner did consent to the search of the property, the search of the backpack, and that's another reason why Sawyer could not have had a reasonable expectation of privacy in the backpack. If you leave an item of your property behind, or somebody else has the power to consent, or somebody else has the power to open it up, and certainly has the power to consent to the police opening it up and looking into it, you can't, I would argue, you cannot have a reasonable expectation that that backpack would remain private and not open. So the owner could have walked back into his own house and opened up the backpack and make sure that it didn't have anything dangerous in it. Right. The owner would have known that that's not my backpack, and of course he would have opened it up and had found it. Now one more factor that I think plays into this abandonment argument is Sawyer had left it behind. There's no name, no phone number on the outside of it. There was no plan from Sawyer's perspective of getting that back. If you consign a suitcase to the airline, you plan to get it back at the other end of your trip, right? You hope. One hopes, right? You put your name on it, your phone number, your email. But here, there was no plan or expectation that he was going to get it back. How do we know that? Well, how could he get it back? If he thought that once the police left, he'd run back in and get it. Would he break in again? I suppose. But that's not the sort of thing that would be reasonable. So do you see these as two distinct theories, the abandonment theory on the one hand and the no expectation of privacy as a trespasser on the other? Or do you see them as sort of melded together? I think they reinforce one another. But are distinct? Sorry? So they're mutually reinforcing but distinct? Are they distinct? Let's say that we're inclined to go your way. Could we decide it based on the no expectation of privacy because you're a trespasser rationale without talking about abandonment? I think you could. Are there other cases that have dealt with this trespasser situation just like this? With closed containers, I haven't found any. There are other trespass cases having to do with- But not along with a closed container. I haven't found such one. From the police point of view, they had no reason to think that the owner could not consent to the search of that backpack. So they certainly act- That's part of the abandonment argument is from the police officer's point of view, they would have expected to be able to go into the backpack. And that was reasonable on their part. For all these reasons, we ask that the court affirm Mr. Sawyer's conviction. All right. Thank you. Thank you. Mr. Bowling, your time had expired. I'll give you a minute to rebut if you like. Thank you, Judge. I think that's all I need, quite frankly. There is no abandonment. The policeman throws the kids out of the house. Get out of the house. They're under control. They're under arrest. The backpack's in the basement. They're never in the first floor. There is no abandonment at all. They order the defendant and the other guys out of the house, and then they go in and they seize the property. You get a warrant if you want to look in that bag if you're a policeman. You just go searching. It's like me bringing my briefcase into some person's house, and then the police come in and they seize it. Think it would go through my briefcase? I don't think so. Now, the other part is he is not at liberty to disobey the police officer and say, wait a minute, I'm going to get my backpack. No, he's under arrest. He's under constraint. He can't go back and do that. So there is no abandonment. I know the government was going to argue it. I know the government judge rejected it initially, and he didn't bother to go on. I agree. There is no abandonment here. I think the case law is referred to in Carlisle, does refer to one or two abandonment cases in there. Okay. I think you need to finish up. So that's it. I'm finished, Your Honor. All right. Thank you for your attention. Thank you very much. Thanks to both counsel. Thanks also, Mr. Bowen, for taking the appointment. We'll take the case under advisement.